**FILED**
July 06, 2012
CLERK, U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

0004326119

1  Jeffrey W. Dulberg  (CA Bar No. 181200)
   Steven J. Kahn  (CA Bar No. 76933)
2  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
3  Los Angeles, CA  90067-4100
   Telephone: 310/277-6910
4  Facsimile: 310/201-0760

5  Attorneys for Movants B. Wayne Hughes, Jr. and Mariposa
   De Oro, LLC

6

7

8                UNITED STATES BANKRUPTCY COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10                      FRESNO DIVISION

11 | In re:                          | Case No.: 11-63718 FEC
12 |                                 | DC No. JWD-1
   | TIMOTHY JAMES DOLAN and ALLISON MARIE |
13 | DOLAN,                          | Chapter 7
14 |                Debtors.         | **MOTION FOR RELIEF FROM THE**
15 |                                 | **AUTOMATIC STAY UNDER 11 U.S.C.**
   |                                 | **§ 362; MEMORANDUM OF POINTS AND**
   |                                 | **AUTHORITIES AND DECLARATION OF**
16 |                                 | **BRADLEY D. ROSS IN SUPPORT**
   |                                 | **THEREOF**
17

18 |                                 | **Date:**      **August 8, 2012**
19 |                                 | **Time:**      **10:00 a.m.**
   |                                 | **Place:**     **U.S. Courthouse**
20 |                                 |                **2500 Tulare Street**
   |                                 |                **Courtroom 11, Fifth Floor**
21 |                                 |                **Fresno, CA**
   |                                 | **Judge:**     **Honorable Fredrick E. Clement**

22

23 **TO THE HONORABLE FREDRICK E. CLEMENT, UNITED STATES BANKRUPTCY**

24 **JUDGE, THE DEBTORS AND THEIR COUNSEL, THE CHAPTER 7 TRUSTEE AND**

25 **OTHER INTERESTED PARTIES:**

26        Movants, B. Wayne Hughes, Jr. and Mariposa De Oro, LLC ("Movants") hereby move this

27 Court (the "Motion") for an Order granting relief from the automatic stay under 11 U.S.C. § 362 to

28 prosecute the State Court Fraud Action against debtor Timothy Dolan (the "Debtor") (1) in order to

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

liquidate their claim against the Estate and (2) so as to obtain a determination as to whether the Debtor obtained money from Movants through false pretenses, false representations and/or actual fraud, embezzlement and/or larceny in order to form the basis for the nondischargeability claims asserted by Movants in the Nondischargeability Adversary Proceeding, to be decided by the Bankruptcy Court.

Movants submit the attached declaration and memorandum of points and authorities, as well as other evidence attached hereto in support of the Motion.

**WHEREFORE**, Movants request that the Court grant Movants' relief from the automatic stay to proceed with the prosecution of the State Court Fraud Action to (1) liquidate their claim against the Estate and (2) to complete the State Court Fraud Action so as to determine whether the Debtor, among other things, obtained of money from Movants through actual fraud, false pretenses and/or false representations, embezzlement and/or larceny.

Movants further request an order that the pending Nondischargeability Adversary Proceeding be stayed pending entry of judgment in the State Court Fraud Action.

Respectfully submitted,

Dated:    July 6, 2012              PACHULSKI STANG ZIEHL & JONES LLP


By: /s/ Jeffrey W. Dulberg
    Jeffrey W. Dulberg
    Steven J. Kahn
    E-mail:  skahn@pszjlaw.com
    Counsel for Movants B. Wayne Hughes, Jr. and
    Mariposa De Oro, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

DOCS_LA:254752.2 38125-001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

In or about 2006, movants B. Wayne Hughes, Jr. and Mariposa De Oro, LLC (the "Movants") hired Debtor Timothy James Dolan, individually and dba Timber Pacific Homes dba TD Custom Homes and dba Timber Construction Company (the "Debtor") to act as the general contractor for a large construction project in Bradley, California that consisted of seven (7) parcels of property upon which an expansive single family home along with a guest house, ancillary buildings, a kitchen pavilion, roads, landscaping and other improvements were to be constructed (the "Bradley Project").

In or about July 2011, Movants began to discover that the Debtor, in his role as general contractor, was creating and submitting for payment by Movants false invoices purportedly prepared by sub-contractors and vendors, falsely representing those invoices to be costs actually incurred on the Bradley Project and submitted  by such subcontractors and vendors for payment, but which were not.  Movants further discovered that the Debtor secretly altered some invoices to fraudulently increase the amounts actually charged by various sub-contractors and vendors for their goods and services, and also forged numerous Conditional Waiver and Release Upon Progress Payment forms under California Civil Code section 34262 in the names of various vendors and sub-contractors.  Additionally, the Debtor submitted invoices for his own fees based upon a percentage of the underlying sub-contractor and vendor invoices, which fees were themselves improperly inflated by reason of the false and altered sub-contractor and vendor invoices submitted by the Debtor to Movants upon which the fees were based.  Debtor fraudulently concealed each of these facts from Movants.

On October 27, 2011, Movants filed a civil complaint against the Debtor in the Superior Court of the State of California, County of Ventura assigned Case No. 56-2011-00405937-CU-FR-VTA stating, amongst other causes of action, claims for fraud and intentional deceit (the "State Court Fraud Action").  A true and correct copy of the State Court Fraud Action is attached hereto

3

and incorporated herein by reference as **Exhibit "A."** At the time the State Court Fraud Action was filed, Movants identified at least $600,000 in false and fraudulent charges.[1]

The Debtor filed an answer to the State Court Fraud Complaint on November 28, 2011.

On or about December 23, 2011, the Debtor and his wife, Alison Marie Dolan, filed a joint chapter 13 voluntary petition instituting the above-captioned bankruptcy case. On February 29, 2012, the Chapter 13 Trustee filed a Motion to Convert the Debtor's case from chapter 13 to chapter 7 of the Bankruptcy Code, which conversion was ordered by the Court on March 31, 2012.

Concurrent with the filing of this Motion, Movants filed an adversary proceeding against the Debtor (a) to determine the nature and amount of the debt owed by the Debtor to Movants as alleged in the State Court Fraud Action; (b) to determine non-dischargeability of that debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4); and (c) for denial of discharge pursuant to 11 U.S.C. §§ 727(a)(2) through (a)(5), inclusive (the "Nondischargeability Adversary Proceeding"), a true and correct copy of which is attached hereto as **Exhibit "B."**

## II.

## RELIEF REQUESTED

Through this Motion, Movants seek an order from the Court for relief from the automatic stay under 11 U.S.C. § 362 to prosecute the State Court Fraud Action against the Debtor (1) in order to liquidate their claim against the Estate and (2) so as to obtain a determination as to whether the Debtor obtained money from Movants through false pretenses, false representations and/or actual fraud, embezzlement and/or larceny in order to form the basis for the nondischargeability claims asserted by Movants in the Nondischargeability Adversary Proceeding, to be decided by the Bankruptcy Court.

As more fully set forth below, Movants assert that good cause exists for the granting of this Motion in that (a) the State Court Fraud Action is already pending and at issue, (b) prosecution of the State Court Fraud Action would not adversely affect administration of the estate; (c) the issues to be determined are solely those under state law; (d) there is no jurisdictional basis over the Movants'

---

[1]  Subsequent investigation, which continues, has now identified at least $708,698.44 in false and fraudulent charges.

Pachulski Stang Ziehl & Jones LLP
Attorneys At Law
Los Angeles, CA

state law claims other than 28 U.S.C. 1334; (e) the bankruptcy court would be relieved of the burden of a fact intense fraud trial; (f) the parties will have the right to a jury trial; (g) the interests of judicial economy and expeditious and economic resolution of litigation in the state court would be served, and (h) nondischargeability of the claims asserted by Movants themselves constitute "cause" militating in favor of lifting the stay.

Movants further request that in the event the Motion is granted, the proceedings in the pending Nondischargeability Adversary Proceeding be stayed pending entry of judgment in the State Court Fraud Action.

### III.

### GOOD CAUSE EXISTS TO GRANT RELIEF FROM THE AUTOMATIC STAY

11 U.S.C § 362(d)(1) provides that the Bankruptcy Court <u>shall</u> grant relief from the stay for cause.

Although the Bankruptcy Code does not provide a definition of "cause," courts in the Ninth Circuit have granted relief from stay to permit pending litigation to be concluded in a non-bankruptcy forum, such as a state court. *Truebro Inc. v. Plumberex Specialty Products, Inc. (In re Plumberex Specialty Products, Inc.)*, 311 B.R. 551, 556-57 (Bankr. C.D. Cal. 2004); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162 (9th Cir. 1990); *Packerland Packing Co. v. Griffith Brokerage Co. (In re Kemble)*, 776 F.2d 802 (9th Cir. 1985).

In *Santa Clara County Fair*, 180 B.R. 564 (9th Cir. BAP 1995), the Court stated that the legislative history of 11 U.S.C. § 362(a) indicates that judicial economy provides sufficient cause to lift the stay to permit the prosecution of actions pending elsewhere against a debtor, stating: "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere."

As noted in *In re Hakim,* 212 B.R. 632 (N.D. Cal. 1997), "The factors for consideration in the relief from stay context are closely related to those factors a bankruptcy court considers in evaluating whether to abstain from hearing a similar proceeding that has commenced in state court.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

Section 1334(c)(1) of Title 28 affords the right of permissive abstention 'in the interest of justice and in the interest of comity with state courts with respect to state law.'"

In that context, in *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162 (9th Cir 1990), in determing whether to allow non-bankruptcy court litigation to proceed, the Ninth Circuit adopted the factors first set forth in *In re Republic Reader's Serv., Inc.*, 81 B.R. 422 (Bankr. S.D. Tex. 1987), as follows:

> (1) The effect or lack thereof on the efficient administration of the estate if the Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted 'core' proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

In the present case, at least nine of the twelve factors adopted by the Ninth Circuit militate toward the Court granting relief from stay to proceed with the pending State Court Fraud Action against the Debtor:

(1)   Prosecution of the State Court Fraud Action will have no adverse affect on the efficient administration of the estate if the Court recommends abstention;

(2)   There are only state law issues to be determined in the State Court Fraud Action;

(3)   The State Court Fraud Action is a pending related proceeding already commenced in the state court;

(4)   There is no jurisdictional basis, other than 28 U.S.C. § 1334, for the claims against the Debtor sought to be determined in the state court;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

(5)    The degree of relatedness or remoteness of the State Court Fraud Action to the main bankruptcy case favors Movants;

(6)    The substance of Movants' claims are all under state law rather than the form of an asserted "core" proceeding;

(7)    Feasibility of severing the Movants' state law claim from core bankruptcy matters will allow a judgment to be entered in the state court with enforcement left to the bankruptcy court, the forum for determining nondischargeability;

(8)    Prosecution of a fact intensive fraud case in the state court will ease the burden of the bankruptcy court's docket; and

(9)    The Debtor and Movants shall be afforded the right to a jury trial in the state court.[2]

In *Quintrall v. Nunes (In re Quintrall),* 2007 Bankr. LEXIS 4831 (BAP No. SC-06-1418-MaHB), claimants (like Movants herein) had filed a pre-petition fraud action in the state court against the debtor and others. The debtor filed a chapter 7 petition. Thereafter, claimants (like Movants herein) filed a nondischargeability adversary proceeding against the debtor under 11 U.S.C. §§ 523(a)(2)(A), (a)(4) and (a)(6), and shortly thereafter filed a motion for relief from stay in order to continue prosecution of their state court lawsuit.

The bankruptcy court acknowledged that the state court could not decide whether the debts alleged against the Debtor were nondischargeable, but held that the state court could decide the factual issues that might be pertinent to, and perhaps preclusive in the nondischargeability action. The Court therefore permitted the claimants to pursue the state court action in order to (a) liquidate their claim against the Estate and (b) to determine whether the Debtor committed, among other things, actual fraud, defalcation while acting in a fiduciary capacity or willful and malicious injury so as to provide the basis for a later determination by the bankruptcy court that their claims were nondischargeable.

---

[2]  Movants do not know whether the additional ground of "forum shopping" by the Debtor provides a tenth ground for permitting the State Court Fraud Action to proceed.

The Debtor appealed the bankruptcy court's granting of relief from stay to the United States Bankruptcy Appellate Panel for the Ninth Circuit. In approving the ruling of the Bankruptcy Court granting relief from stay, and noting that judicial economy itself provides sufficient cause to lift the stay to permit the prosecution of actions pending elsewhere against the Debtor, the Bankruptcy Appellate Panel also stated:

> "Debtor argues that the Bankruptcy Court erred as a matter of law in allowing the state court to make factual findings which may or may not give rise to issue preclusion in the nondischargeability action. Debtor contends that 'the Bankruptcy Court cannot abdicate its congressionally mandated role in determination of an issue regarding dischargeability.' . . . The Bankruptcy Court did not abdicate its responsibility: it correctly noted that it alone can determine dischargeability and that any findings made by the state court with respect to fraud or other conduct would have to be tailored to § 523 before issue preclusion could apply. As noted by one leading treatise on bankruptcy law: 'It is not unheard of for a bankruptcy court to abstain from hearing the liability phase of a discharge trial, instead directing that it be heard in state court, reserving for itself the determination of whether any liability found to exist is dischargeable.' 1 *Collier on Bankruptcy*, ¶ 3.05[1] (Rev. 15th Ed. 2007). In *Kemble,* the Ninth Circuit affirmed a decision to lift the stay to allow fraud litigation to proceed outside of bankruptcy court, even though a § 523 nondischargeability action involving similar allegations was pending. *Kemble*, 776 F.2d at 803 and 807. Debtor's contention that the bankruptcy court's decision to modify the automatic stay was incorrect as a matter of law is not well taken."

As noted above, judicial economy and the other factors enumerated in *In re Tucson Estates, Inc.,* militate toward the granting relief from stay as prayed. Additionally, as noted in *March, Ahart & Shapiro*, Cal. Prac. Guide: Bankruptcy (the Rutter Group 2011) at 8:1176, "nondischargeability of the claim may itself constitute 'cause' militating in favor of lifting the stay [See, *Acevedo v. Van Dorn Plastic Machinery Co.* (Bankr. E.D.N.Y. 1986) 68 B.R. 495, 498]."

## IV.

## <u>CONCLUSION</u>

For the reasons set forth hereinabove, Movants request that the Court grant Movants' relief from the automatic stay to proceed with the prosecution of the State Court Fraud Action to (1) liquidate their claim against the Estate and (2) to complete the State Court Fraud Action so as to determine whether the Debtor, among other things, obtained of money from Movants through actual

1  fraud, false pretenses and/or false representations, embezzlement and/or larceny.

2      Movants further request an order that the pending Nondischargeability Adversary Proceeding

3  be stayed pending entry of judgment in the State Court Fraud Action.

4

5                                          Respectfully submitted,

6  Dated:   July 6, 2012                   PACHULSKI STANG ZIEHL & JONES LLP

7

8                                          By: /s/ Jeffrey W. Dulberg
                                              Jeffrey W. Dulberg
9                                             Steven J. Kahn
                                              E-mail: skahn@pszjlaw.com
10                                            Counsel for Movants B. Wayne Hughes, Jr. and
                                              Mariposa De Oro, LLC

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF BRADLEY D. ROSS

I, Bradley D. Ross, declare and state as follows:

1.     I am an attorney at law duly licensed to practice in the state of California.  I am a partner in the law firm of Freeman, Freeman & Smiley, LLP, counsel for Movants, B. Wayne Hughes, Jr. and Mariposa De Oro, LLC.

2.     Except as otherwise stated, I have personal knowledge of the facts set forth herein and if called as a witness I could and would competently testify thereto.

3.     I am informed and believe that in or about 2006, Movants hired Debtor Timothy James Dolan, individually and dba Timber Pacific Homes dba TD Custom Homes and dba Timber Construction Company (the "Debtor") to act as the general contractor for a large construction project in Bradley, California that consisted of seven (7) parcels of property upon which an expansive single family home along with a guest house, ancillary buildings, a kitchen pavilion, roads, landscaping and other improvements were to be constructed (the "Bradley Project").

4.     I am further informed and believe that, in or about July 2011, Movants began to discover that the Debtor, in his role as general contractor, was creating and submitting for payment by Movants false invoices purportedly prepared by sub-contractors and vendors, falsely representing those invoices to be costs actually incurred on the Bradley Project and submitted  by such subcontractors and vendors for payment, but which were not.  Movants further discovered that the Debtor secretly altered some invoices to fraudulently increase the amounts actually charged by various sub-contractors and vendors for their goods and services, and also forged numerous Conditional Waiver and Release Upon Progress Payment forms under California Civil Code section 34262 in the names of various vendors and sub-contractors.  Additionally, the Debtor submitted invoices for his own fees based upon a percentage of the underlying sub-contractor and vendor invoices, which fees were themselves improperly inflated by reason of the false and altered sub-contractor and vendor invoices submitted by the Debtor to Movants upon which the fees were based. Debtor fraudulently concealed each of these facts from Movants.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

10

5.      On October 27, 2011, Movants filed a civil complaint against the Debtor in the Superior Court of the State of California, County of Ventura assigned Case No. 56-2011-00405937-CU-FR-VTA stating, amongst other causes of action, claims for fraud and intentional deceit (the "State Court Fraud Action"). A true and correct copy of the State Court Fraud Action is attached hereto and incorporated herein by reference as **Exhibit "A."** At the time the State Court Fraud Action was filed, Movants identified at least $600,000 in false and fraudulent charges.

6.      The Debtor filed an answer to the State Court Fraud Complaint on November 28, 2011.

7.      On or about December 23, 2011, the Debtor and his wife, Alison Marie Dolan, filed a joint chapter 13 voluntary petition instituting the above-captioned bankruptcy case. On February 29, 2012, the Chapter 13 Trustee filed a Motion to Convert the Debtor's case from chapter 13 to chapter 7 of the Bankruptcy Code, which conversion was ordered by the Court on March 31, 2012.

8.      Concurrent with the filing of this Motion, Movants filed an adversary proceeding against the Debtor (a) to determine the nature and amount of the debt owed by the Debtor to Movants as alleged in the State Court Fraud Action; (b) to determine non-dischargeability of that debt pursuant to 11 U.S.C. §§ 523(a)(2)(A) and (a)(4); and (c) for denial of discharge pursuant to 11 U.S.C. §§ 727(a)(2) through (a)(5), inclusive, a true and correct copy of which is attached hereto as **Exhibit "B."**

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 5th day of July, 2012, at Los Angeles, California.

BRADLEY D. ROSS

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

11

# EXHIBIT A

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

RECEIVED
VENTURA SUPERIOR COURT

OCT 27 2011

| FOR COURT USE ONLY |
| --- |
| (SOLO PARA USO DE LA CORTE) |
| VENTURA |
| SUPERIOR COURT |
| **FILED** |
| OCT 27 2011 |
| MICHAEL D. PLANET |
| Executive Officer and Clerk |
| BY: L. KOZIN , Deputy |

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
TIMOTHY DOLAN, an individual; TIMBER PACIFIC doing business as TD
CUSTOM HOMES, a California corporation; TIMBER CONSTRUCTION
COMPANY, a partnership; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
B. WAYNE HUGHES, JR, an individual; MARIPOSA DE ORO, LLC, a limited
liability company

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
| --- | --- |
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Superior Court of the State of California<br>County of Ventura<br>800 South Victoria Avenue<br>Ventura, California 93009 | CASE NUMBER:<br>*(Número del Caso):*<br>56-2011-00405937-CU-FR-VTA |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Bradley D. Ross, Esq. (Bar No. 101293) and Dawn B. Eyerly, Esq. (Bar No. 185074)
FREEMAN, FREEMAN & SMILEY, LLP, 3415 South Sepulveda Boulevard, Los Angeles, California 90034
(310) 255-6100

| DATE: October 27, 2011 OCT 27 2011 | MICHAEL PLANET | Clerk, by | L. KOZIN | , Deputy |
| --- | --- | --- | --- | --- |
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009]

**SUMMONS**

American LegalNet, Inc.
www.FormsWorkflow.com

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

VENTURA SUPERIOR COURT

OCT 27 2011

1 | BRADLEY D. ROSS (BAR NO. 101293)
bdr@ffslaw.com
2 | DAWN B. EYERLY (BAR NO. 185074)
dbe@ffslaw.com
3 | FREEMAN, FREEMAN & SMILEY, LLP
3415 South Sepulveda Boulevard, Suite 1200
4 | Los Angeles, California 90034
Telephone: (310) 255-6100
5 | Facsimile: (310) 391-4042

6 | Attorneys for Plaintiffs B. Wayne Hughes, Jr.
and Mariposa De Oro, LLC

VENTURA
SUPERIOR COURT
# FILED

OCT 27 2011

MICHAEL D. PLANET
Executive Officer and Clerk

BY: _____, Deputy
L. KOZIN

8 | ## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 | ## COUNTY OF VENTURA

11 | B. WAYNE HUGHES, JR., an individual;
MARIPOSA DE ORO, LLC, a limited
12 | liability company,

13 |               Plaintiffs,

14 | vs.

15 | TIMOTHY DOLAN, an individual;
TIMBER PACIFIC doing business as TD
16 | CUSTOM HOMES, a California
corporation; TIMBER CONSTRUCTION
17 | COMPANY, a partnership; and DOES 1
through 100, inclusive,

18 |

19 |               Defendants.

Case No.     56-2011-00405937-CU-FR-VTA

COMPLAINT FOR:

1) **BREACH OF CONTRACT;**
2) **BREACH OF THE COVENANT OF
GOOD FAITH AND FAIR DEALING;**
3) **FRAUD AND INTENTIONAL DECEIT;**
4) **CONVERSION**
5) **NEGLIGENT MISREPRESENTATION;**
6) **NEGLIGENCE**
7) **UNFAIR COMPETITION UNDER
BUSINESS AND PROFESSIONS CODE §
17200;**
8) **ACCOUNTING; and**
9) **IMPOSITION OF CONSTRUCTIVE
TRUST**

21 |       Plaintiffs B. Wayne Hughes, Jr. and Mariposa De Oro, LLC complains of

22 | Defendants and alleges as follows:

23 |                    ## COMMON ALLEGATIONS TO ALL CLAIMS

24 |       1.     Plaintiff B. Wayne Hughes, Jr. is and at all times herein mentioned was an

25 | individual residing in Los Angeles County, California.

26 |       2.     Plaintiff Mariposa De Oro, LLC is, and at all times herein mentioned was, a

27 | limited liability company organized and existing under the laws of the State of California

28 | and doing business in San Luis Obispo County, California.

1521732.3 23176-800

1
COMPLAINT

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

3.     Defendant Timothy Dolan is and at all times herein mentioned was an individual residing in Kern County, California, and doing business in San Luis Obispo County, California.

4.     Defendant Timber Pacific is, and at all times herein mentioned was, a California corporation that did business as TD Custom Homes.  Timber Pacific's principal place of business was and is in the County of Ventura, California.  Timothy Dolan is listed as the President of Timber Pacific.

5.     Defendant Timber Construction Company, is a partnership with its principal place of business in San Luis Obispo County, California.  At some of the relevant times mentioned in this Complaint, Timothy Dolan maintained a California Contractor's License under Timber Construction Company.

6.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and thereupon allege that each of the fictitiously named Defendants is responsible in some manner, either directly or as guarantors, for the occurrences herein alleged and Plaintiffs' injuries were proximately caused thereby.

7.     Plaintiffs are informed and believe and thereupon allege that at all times relevant herein, each of the Doe Defendants and each of the named Defendants were the agents and/or employees of one or more of the other Defendants, were acting within the course and scope of said agency and/or employment, and that each Defendant has aided and assisted one or more of the other Defendants in committing the wrongful acts herein alleged.  Plaintiffs are informed and believe and thereupon allege that Defendants, and each of them, conspired and agreed among themselves to do the acts complained of herein and were, in doing the acts complained of herein, acting pursuant to said conspiracy, and that each Defendant sued herein is jointly and severally responsible and liable to Plaintiffs for the damages alleged herein.

## FACTS APPLICABLE TO ALL CAUSES OF ACTION

8.     In or about 2006, Plaintiffs hired Defendants to act as the general contractor for a large construction project in Bradley, California that consisted of several parcels of property ("Project").  The Project consisted of an expansive single family home along with a guest house, ancillary buildings, a kitchen pavilion, roads, and landscaping, among other things.  When the Project began, Mariposa De Oro, LLC was the owner of the property.  In approximately 2008, B. Wayne Hughes, Jr. became the owner of the property.

9.     Plaintiff B. Wayne Hughes, Jr. had previously worked with Timothy Dolan on other construction projects, and the two had become friends.  Because of that friendship, Plaintiff Hughes trusted Dolan, and did not believe that he would commit fraud, or would deceive him in any way.

10.     In acting as the general contractor for the Project, Defendants located and hired vendors to supply items, and subcontractors to perform work.  During the course of the Project, invoices were submitted by almost 200 separate vendors and/or subcontractors.

11.     Defendants oversaw the work on the Project, and acted as the middle man between the subcontractors/vendors on the one hand, and Plaintiffs on the other, pursuant to an oral agreement between the parties that governed the parties' obligations and responsibilities.

12.     For all phases of the Project, Defendants would prepare a budget and provide it to Plaintiffs.  The budget included all work to be performed on the Project, along with fees payable to Timber Pacific or Timber Construction (depending on the time frame), including a general contractor fee, a supervision fee, a project management fee, and an accounting fee.

13.     The parties entered into a written agreement that memorialized their agreement that the budget was fixed, and no additional monies would be charged to Plaintiffs, with the exception of pre-approved change orders.  It was agreed by the parties

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

1  that the budget was "cost-plus" with a guaranteed maximum amount per each line item.

2        14.    The process of submitting invoices and getting paid was as follows:

3  Defendant Timothy Dolan was to obtain invoices from the subcontractors and vendors,

4  and was to review those invoices for accuracy.  He then was to add the invoices together

5  for each category of work, and create a master invoice from one of his companies (either

6  Timber Pacific or Timber Construction), with the individual subcontractor/vendor invoices

7  that comprised his numbers attached.  Defendants were also to attach to each Timber

8  Pacific/Timber Construction invoice, a Conditional Waiver and Release Upon Progress

9  Payment form, pursuant to Civil Code section 3262 ("Waiver") signed by each

10  subcontractor submitting an invoice.  This packet was to be provided to Plaintiffs before

11  each payment was made.

12        15.    On some of the invoices, Defendants also billed the additional percentage

13  charge for being a general contractor, along with supervision fees, project management

14  fees, and accounting fees, pursuant to the agreed-upon budget.

15        16.    Up until discovering the fraud, Plaintiffs paid all invoices that were

16  submitted by Defendants.  The payments were made by issuing a check made payable to

17  Timber Pacific, and at a later date, to Timber Construction.  At all times, Defendant Dolan

18  was responsible for paying the subcontractors and vendors.

19        17.    During the course of construction, Defendants provided Plaintiffs with many

20  invoices, attached to each Timber Pacific/Timber Construction invoice.  The invoices

21  appeared to be from different subcontractors and vendors.  Anytime Plaintiffs were

22  presented with an invoice, they would remit payment to Defendants.  Because of their

23  longstanding relationship and trust, Plaintiffs initially did not question the authenticity of

24  the invoices submitted, or the amounts shown on those invoices.

25        18.    In addition, following the payment of the invoiced amounts to

26  subcontractors, Defendants would provide Plaintiffs with Unconditional Waivers that

27  would state that a particular amount of money had been paid, and that the subcontractor

28  released certain claims pertaining to the Project.  The Waivers contained what appeared

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

1  to be subcontractor signatures.

2      19.    During the course of the Project, Plaintiffs have paid in excess of

3  $10,000,000 in invoices submitted by Defendants.  Those amounts were all represented

4  to have been charged directly by the respective subcontractors/vendors, and were to be

5  paid in full to the subcontractors/vendors.  Plaintiffs have also paid Defendants in excess

6  of $1,500,000 in general contractor fees, supervision fees, property management fees,

7  and accounting fees.

8      20.    It has recently been discovered that the invoices that were submitted by

9  Defendants to Plaintiffs were not always created by subcontractors or vendors.  Instead,

10 on more than one occasion, Defendant Dolan created invoices on behalf of

11 subcontractors or vendors, and represented to Plaintiffs that the invoices were in fact

12 created by the subcontractor or vendor, and contained accurate information.  When

13 Dolan would "create" invoices using other entities' names, he would often inflate the

14 prices being charged by that entity.  For example, a subcontractor would inform

15 Defendant Dolan that the charges for his work totaled $15,000.  Instead of providing an

16 invoice in the amount of $15,000, Defendant Dolan would create an invoice for $20,000,

17 and represent to Plaintiffs that the subcontractor was charging $20,000.  The $20,000

18 invoice would be attached to the Timber Pacific invoice submitted to Plaintiffs, and would

19 be included in the numbers submitted by Timber Pacific.  Plaintiffs never questioned the

20 truth of the invoices.  As such, Plaintiffs would write a check to Timber Pacific in the

21 amount of $20,000 in exchange for an Unconditional Waiver.  Defendant Dolan in return

22 would pocket $5,000, and pay $15,000 to the subcontractor.  In addition, Timber Pacific

23 would charge percentage fees on the $20,000, and Plaintiffs would blindly pay those

24 fees.

25     21.    It has also recently been discovered that a large percentage of the Waivers

26 that were provided by Defendants that contained signatures by other entities were in fact

27 not signed by those entities.  Instead, the signatures were forged by Defendant Dolan.

28     22.    Additionally, it has been discovered that Defendant Dolan submitted

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

1 │ duplicate invoices covering the same items and/or work.  When Plaintiffs would pay those

2 │ invoices, Defendants would keep the excess money.

3 │      23.    It is believed that due to Defendants fraud, Plaintiffs have overpaid

4 │ Defendants in excess of $600,000.  Additionally, Defendants recently submitted new,

5 │ fraudulent invoices from a subcontractor totaling approximately $500,000.  Plaintiffs do

6 │ not know the extent of Defendants' fraud and deceit, and until they obtain each

7 │ subcontractors' records, will not know the extent of their damage.

8 │      24.    After Plaintiffs confronted Defendant Dolan about the forged invoices and

9 │ Waivers, the overcharges, and the increased and improper bills, Defendant Dolan asked

10 │ at least one subcontractor to lie for him, and create fake invoices to match the invoices

11 │ that were submitted by Defendant Dolan.  That subcontractor refused to participate in

12 │ Defendants' fraud.

### FIRST CAUSE OF ACTION

**(Breach of Contract Against all Defendants**

**and Does 1 through 100, inclusive)**

16 │      25.    Plaintiffs reallege and incorporate herein by this reference the allegations in

17 │ paragraphs 1 through 24 above.

18 │      26.    In or about 2006, Plaintiffs entered into an oral contract with Defendants for

19 │ Defendants to act as a general contractor on the Project.  The Project was to be

20 │ completed in phases, pursuant to the budget submitted and accepted for each phase.

21 │ The terms of that oral contract were as follows:

22 │         (a)    Defendants were to retain subcontractors to perform work on the

23 │ Project;

24 │         (b)    Defendants were to oversee the subcontractors' work on the Project,

25 │ including by being present at the Project during construction;

26 │         (c)    Defendants were to arrange for and obtain items for use at the

27 │ Project from vendors;

28 │         (d)    Defendants were to truthfully and accurately obtain and submit

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

invoices from the subcontractors and vendors to Plaintiffs;

(e)     Plaintiffs were to pay the amount of the subcontractor/vendor invoices by paying Defendants, who would in turn pay the subcontractor/vendor;

(f)     Plaintiffs were to pay Defendants an agreed upon percentage of the gross invoice costs of the subcontractors and vendors (initially 12%, later reduced to 10%), as well as a set fee for Supervision, Property Management fees, and an Accounting fee as set forth in the budget;

(g)     Defendants were to pay the subcontractors and vendors with the money received from Plaintiffs;

(g)     Defendants were to keep truthful and accurate books and records showing all charges, payments, and work done on the Project;

(h)     Defendants would obtain and maintain insurance on the Project, that Plaintiffs would pay for; and

(i)     Defendants were to obtain Unconditional Waivers from the subcontractors.

27.     Plaintiffs performed all obligations on their part, pursuant to the contract.

28.     Defendants breached the contract by, among other things, failing to tell Plaintiffs that Dolan's contractor's license expired in 2008, creating fake invoices under other people/entity names, misrepresenting the amounts charged by subcontractors/vendors, submitting duplicate billings for the same work and/or items, forging signatures on Waivers, misrepresenting the amounts withheld by Defendants, failing to be present supervising the Project, and failing to keep clean, accurate books and records.

29.     As a direct result of Defendants' numerous breaches, Plaintiffs have been damaged in an amount to be proven at trial, but in excess of $600,000.

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

## SECOND CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing Against all Defendants and Does 1 through 100, inclusive)

30.    Plaintiffs reallege and incorporate herein by this reference the allegations in paragraphs 1 through 29 above.

31.    Under California Law, all contracts are subject to the implied covenant of good faith and fair dealing pursuant to which neither party shall take any actions or fail to take any actions which deprive either party of the benefits of the contract.

32.    Implied in the above contract was an obligation of Defendants to act truthfully and honestly in their dealings with Plaintiffs.

33.    By submitting fake and fraudulent invoices, providing Plaintiffs with forged Waivers, artificially inflating subcontractor/vendor bills, collecting on duplicate bills, and asking subcontractors and vendors to lie about their charges, Defendants breached the implied covenant of good faith and fair dealing.

34.    As a direct and proximate result of the unreasonable conduct of Defendants, Plaintiffs have been damaged in an amount to proven at trial but in excess of $600,000.

## THIRD CAUSE OF ACTION

### (Fraud and Intentional Deceit Against all Defendants and Does 1 through 100, inclusive)

35.    Plaintiffs reallege and incorporate herein by this reference the allegations in paragraphs 1 through 34 above.

36.    In presenting fake and/or altered invoices to Plaintiffs, containing inflated charges by subcontractors and/or vendors, Defendants made affirmative misrepresentations to Plaintiffs.

37.    After it was discovered that Defendants had misrepresented the amount of the invoices from the subcontractors/vendors, on at least one occasion, Plaintiff Dolan asked a subcontractor to re-create a fake invoice with an inflated amount so as to match

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

1 | the fake invoices already submitted to Plaintiffs, and after receiving payment from

2 | Plaintiffs, to write Defendants a check, unbeknownst to Plaintiffs.

3      38.     The amount being charged by the subcontractors and/or vendors were

4 | material facts as it pertained to the Project. Not only was that a material term of the

5 | contract, but Defendants' general contractor 10% commission fee was based directly on

6 | the invoice amounts from the subcontractors and vendors. As such, once those numbers

7 | were inflated, not only did Plaintiffs pay more to Defendants believing it to be for the

8 | subcontractors/vendors, but Plaintiffs also unknowingly paid more to Defendant as part of

9 | his commission.

10      39.     Defendants knew that the invoices that were being submitted were forged

11 | and contained improper information. The concealment of the true amount of each invoice

12 | was perpetrated by Defendants in a manner that was likely to mislead Plaintiffs and did in

13 | fact mislead Plaintiffs.

14      40.     The misrepresentations regarding the amount of each invoice, the failure to

15 | disclose the true amounts being charged by each subcontractor and/or vendor, and the

16 | concealment of such information herein alleged were made by Defendants with the intent

17 | to induce Plaintiffs to rely thereon. Plaintiffs did rely on the actions of Defendants to

18 | Plaintiffs' detriment.

19      41.     Plaintiffs, at the times that Defendants made these misrepresentations,

20 | were ignorant that the invoices were forged, and contained inflated numbers. If Plaintiffs

21 | had been aware of the fact that the invoices were forged and contained improper

22 | information, Plaintiffs would not have paid the inflated amounts.

23      42.     As a proximate result of Defendants' actions, Plaintiffs have been damaged

24 | in an amount to be proved at trial but believed to exceed $600,000.

25      43.     In doing the acts herein alleged, Defendants acted willfully and with the

26 | intent to cause injury to Plaintiffs and with malice, oppression, and fraud as defined under

27 | Civil Code § 3294(c). These Defendants are therefore guilty of malice, oppression, and

28 | fraud in conscious disregard of Plaintiffs' rights, so as to justify an award of exemplary

1 and punitive damages in an amount appropriate to punish Defendants and deter others

2 from engaging in similar misconduct.

3                    **FOURTH CAUSE OF ACTION**

4               **(Conversion Against all Defendants**

5               **and Does 1 through 100, inclusive)**

6       44.    Plaintiffs reallege and incorporate herein by this reference the allegations in

7 paragraphs 1 through 43 above.

8       45.    In doing the acts alleged herein, Defendants converted money that

9 belonged to Plaintiffs.

10      46.    At least $600,000 that was paid to Defendants for alleged work on the

11 Project was overpaid based on the inflated numbers as stated on the invoices.

12 Defendants were not entitled to keep any more than 10% of the actual amount of the

13 invoices submitted by the subcontractors and vendors.  Because Defendants

14 misrepresented the amount of the invoices and collected multiple times for certain work,

15 Plaintiffs paid, and Defendants received, money to which they were not entitled.  They

16 have converted that money for their own use.

17      47.    At all times herein mentioned, Plaintiffs were, and are the sole owners

18 entitled to possession of the money identified herein.

19      48.    As a proximate result of Defendants' conversion of such property, Plaintiffs

20 have suffered damages in an amount to be proved at trial, but believed to exceed

21 $600,000.

22      49.    Defendants' actions were willful and malicious in that they were perpetrated

23 for the purpose of injuring and defrauding Plaintiffs, and Plaintiffs are therefore entitled to

24 punitive damages in an amount to be proved at trial.

25                    **FIFTH CAUSE OF ACTION**

26          **(Negligent Misrepresentation Against all Defendants**

27               **and Does 1 through 100, inclusive)**

28      50.    Plaintiffs reallege and incorporate herein by this reference the allegations in

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

paragraphs 1 through 49, above.

51.    In addition to the fake invoices being submitted to Plaintiffs, work on the Project and products for the Project were repeated on several different invoices that were submitted.  Because the work or items were repeated, Plaintiffs paid multiple times for the same work and/or items.  Defendants kept the money from the repeated work and/or items.

52.    If the duplicate billings were not intentional, then they were negligent on the part of Defendants.

53.    The duplicate billings were submitted without any reasonable ground for believing them to be the truthful numbers.  Indeed, Defendants had an obligation under the terms of the contract to check all bills submitted by vendors and subcontractors to ensure that no items were billed twice.

54.    In addition, there were significant discrepancies between the numbers on the attached invoices allegedly from subcontractors and vendors and the numbers noted on the invoices from Timber Pacific or Timber Construction.  If this was not intentional, then it was negligent on the part of Defendants.

55.    The invoices were submitted with the intention that Plaintiffs rely upon the amounts as stated on the invoices.

56.    Plaintiffs indeed justifiably relied on the amounts as stated on the invoices submitted by Defendants.

57.    As a proximate result of Defendants' misrepresentations as described above, and in direct reliance on the incorrect numbers submitted by Defendants, Plaintiffs had been damaged in an amount to be proved at trial in an amount believed to exceed $600,000.

### SIXTH CAUSE OF ACTION

### (Negligence Against all Defendants

### and Does 1 through 100, inclusive)

58.    Plaintiffs reallege and incorporate herein by this reference paragraphs 1

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

through 57 above.

59.     Defendants owed Plaintiffs a duty to keep accurate and truthful records as it pertained to the Project.  Defendants also owed Plaintiffs a duty to review all invoices before they were submitted for payment to Plaintiffs to ensure that the work identified on the invoices was actually completed, the items provided, and nothing was duplicated. Additionally, Defendants owed a duty to Plaintiffs to honestly pass along invoices submitted by the subcontractors and vendors, and not to artificially inflate the numbers to benefit Defendants.  Finally, Defendants owed Plaintiffs a duty to properly oversee the construction of the Project, and were specifically being paid to supervise all construction.

60.     Defendants breached these duties by engaging in the conduct described above, and by making false representations to Plaintiffs.  Defendants also breached these duties by failing to properly supervise the Project.

61.     As a direct and proximate result of Defendants' negligence as alleged herein, Plaintiffs have sustained damages in an amount to be proven at trial, but in excess of $600,000.

## SEVENTH CAUSE OF ACTION

### (Unfair Competition Under Business and Professions Code § 17200 Against all
### Defendants
### and Does 1 through 100, inclusive)

62.     Plaintiffs reallege and incorporate herein by this reference paragraphs 1 through 61 above.

63.     The California Unfair Competition Law, California Business and Professions Code Sections 17200 *et seq.*, provides in part, at Section 17203:

"Any person who engages, has engaged, or proposes to engage in unfair competition (defined by Section 17200 as "any unlawful, unfair or fraudulent business act or practice") may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

64.     Defendants, individually and in concert, have engaged in unfair business acts and practices within the meaning of California Business and Professional Code Section 17200 *et seq*. As alleged herein, these unfair business acts and practices include but are not limited to forging invoices, submitting inflated invoices for payments, fraudulently asking subcontractors to re-create fake invoices, and inflating subcontractor and vendor pricing so Defendants could collect additional monies both in commission, and simply by the overpayments.

65.     As a direct, proximate, and foreseeable result of Defendants' wrongful conduct, Plaintiffs' funds have been fraudulently diverted by Defendants.  Plaintiffs are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such unfair business acts or practices.

66.     Pursuant to Section 17203 of the California Business and Professions Code, Plaintiffs seek an order of this Court allowing them to reclaim the full amount of all of the moneys converted by Defendants, so as to restore any and all monies to Plaintiffs which were acquired and obtained by the means of such unfair business practices, as well as an order for disgorgement by Defendants of all revenues, earnings, profits, compensation, and benefits that they may have obtained as a result of such unfair business acts or practices.

67.     Pursuant to Section 17203 of the California Business and Professions Code, Plaintiffs also seek an order of this Court for a preliminary and permanent injunction enjoining Defendants, and Defendants' agents, servants, and employees, and all persons acting under or in concert with them, from continuing to engage in such unfair business acts and practices.

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

## EIGHTH CAUSE OF ACTION

### (Accounting Against all Defendants

### and Does 1 through 100, inclusive)

68.     Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 67 above.

69.     As a direct result of Defendants' actions as alleged above, Defendants have received and are in possession of monies which rightfully belong to Plaintiffs.  The amount of money due to Plaintiffs from Defendants is unknown to Plaintiffs and cannot be ascertained without an accounting thereof.  Plaintiffs have demanded an accounting, but Defendants have failed and/or refused, and continue to fail and/or refuse to provide the requested information necessary to allow a full accounting.  Accordingly, an accounting is necessary.

## NINTH CAUSE OF ACTION

### (Imposition of Constructive Trust Against all Defendants

### and Does 1 through 100, inclusive)

70.     Plaintiffs reallege and incorporate herein by this reference the allegations of paragraphs 1 through 69 above.

71.     As a result of the conduct of Defendants as herein alleged, Defendants should be ordered to hold any monies converted by them or earned by them as a result of their wrongful conduct in constructive trust for Plaintiffs.

## PRAYER

WHEREFORE, Plaintiffs pray for relief as follows:

ON THE FIRST AND SECOND CAUSES OF ACTION FOR BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING:

1.     For compensatory damages in an amount to be proved at trial;

2.     For consequential and incidental damages in an amount to be proved at trial; and

3.    For interest at the legal rate in an amount to be proved at trial;

ON THE THIRD CAUSE OF ACTION FOR FRAUD/DECEIT:

8.    For compensatory damages in an amount to be proved at trial;

9.    For consequential and incidental damages according to proof;

10.   For interest at the legal rate in an amount to be proved at trial;

11.   For punitive damages in an amount appropriate to punish Defendants, and each of them, and to deter others from engaging in similar misconduct;

ON THE FOURTH CAUSE OF ACTION FOR CONVERSION:

12.   For compensatory damages in an amount to be proven at trial;

13.   For interest at the legal rate in an amount to be proved at trial;

14.   For compensation for the time and money expended in the pursuit of the money converted;

15.   For the imposition of a constructive trust;

16.   For consequential and incidental damages according to proof;

17.   For punitive damages in an amount appropriate to punish Defendants, and each of them, and to deter others from engaging in similar misconduct;

ON THE FIFTH AND SIXTH CAUSES OF ACTION FOR NEGLIGENCE AND NEGLIGENT MISREPRESENTATION:

5.    For compensatory damages in an amount to be proved at trial;

6.    For consequential and incidental damages in an amount to be proved at trial;

7.    For interest at the legal rate in an amount to be proved at trial;

ON THE SEVENTH CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICES:

18.   For restitution to Plaintiffs of all sums unlawfully collected by and converted by Defendants from Plaintiffs;

19.   For interest on these sums at the legal rate in an amount to be proved at trial;

20.   For a preliminary injunction and a permanent injunction, all enjoining

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

Defendants, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them from:

    (a)    Issuing any checks from any bank account without the prior approval and signature of a limited purpose receiver appointed by the court so as to secure assets and prevent Defendants from surreptitiously diverting the funds and/or assets;

    (b)    Disposing of any assets;

    (c)    Reimbursement of all sums belonging to Plaintiffs which were illegally obtained from Plaintiffs;

    21.    For an order directing Defendants (and each of them) to file with this Court and serve on Plaintiffs within 30 days after service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which the Defendants have complied with the injunction;

    22.    For all of the Defendants' profits, revenues and ill-gotten gains derived from the embezzlement and use of Plaintiffs' funds;

ON THE EIGHTH CAUSE OF ACTION FOR AN ACCOUNTING:

    25.    For an accounting;

    26.    For payment over to Plaintiffs of the amount due from Defendants as a result of the account and interest on that amount at the legal rate;

ON THE NINTH CAUSE OF ACTION FOR IMPOSITION OF CONSTRUCTIVE TRUST:

    27.    For a constructive trust to be imposed on Defendants' assets on behalf of Plaintiffs;

    28.    For a preliminary injunction and a permanent injunction, all enjoining the Defendants, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them from:

    (a)    Issuing any checks from any bank account without the prior approval and signature of a limited purpose receiver appointed by the Court so as to secure assets and prevent the defendants from surreptitiously diverting the funds and/or assets;

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

1      (b)     Disposing of any assets;

2      (c)     Reimbursement of all sums belonging to Plaintiffs which were illegally

3  obtained from Plaintiffs;

4      29.    For an order directing Defendants (and each of them) to file with this Court

5  and serve on Plaintiffs within 30 days after service of an injunction, a report in writing

6  under oath, setting forth in detail the manner and form in which the Defendants have

7  complied with the injunction;

8      ON ALL CAUSES OF ACTION:

9      30.    For costs of suit incurred herein; and

10      31.    For such other and further relief as the Court may deem proper.

11  DATED: October 27, 2011          FREEMAN, FREEMAN & SMILEY, LLP

12

13                      By:

14                         DAWN B. EYERLY

                       Attorneys for Plaintiffs B. Wayne Hughes, Jr.;

15                         Mariposa De Oro, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

FREEMAN, FREEMAN & SMILEY, LLP
3415 SOUTH SEPULVEDA BOULEVARD, SUITE 1200
LOS ANGELES, CALIFORNIA 90034
(310) 255-6100

# EXHIBIT B

Jeffrey W. Dulberg  (CA Bar No. 181200)
Steven J. Kahn  (CA Bar No. 76933)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd.
13th Floor
Los Angeles, CA  90067-4100
Telephone: 310/277-6910
Facsimile: 310/201-0760

Attorneys for B. Wayne Hughes, Jr. and Mariposa De Oro, LLC

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

## UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re:<br><br>TIMOTHY JAMES DOLAN and ALLISON MARIE DOLAN,<br><br>          Debtors.<br>_____<br><br>B. WAYNE HUGHES, JR., an individual, and MARIPOSA DE ORO, LLC, a limited liability company,<br><br>          Plaintiffs,<br><br>      v.<br><br>TIMOTHY JAMES DOLAN, individually and dba TIMBER PACIFIC HOMES dba TD CUSTOM HOMES and dba TIMBER CONSTRUCTION COMPANY,<br><br>          Defendant. | Case No.: 11-63718 FEC<br><br>Chapter 7<br><br>Adversary No.:_____<br><br>**COMPLAINT**<br>**1.  TO DETERMINE DEBT;**<br>**2.  TO DETERMINE NON-DISCHARGEABILITY OF DEBT FOR MONEY OBTAINED THROUGH FALSE PRETENSES, FALSE REPRESENTATIONS, ACTUAL FRAUD AND THROUGH EMBEZZLEMENT AND/OR LARCENY; AND**<br>**3.  FOR DENIAL OF DISCHARGE**<br><br>**[11 U.S.C. §§ 523(a)(2)(A) and (a)(4);**<br>**11 U.S.C. §§  727(a)(2) through (a)(5) inclusive]** |

B. Wayne Hughes, Jr. ("Hughes") and Mariposa De Oro, LLC ("Mariposa," and collectively with Hughes, the "Plaintiffs") for their complaint against Debtor Timothy James Dolan, individually

and dba Timber Pacific Homes dba TD Custom Homes and dba Timber Construction Company

("Defendant") allege as follows:

### THE PARTIES

1.      Plaintiff Hughes is, and at all times mentioned herein was, an individual residing in Los Angeles County, California.

2.      Plaintiff Mariposa is, and at all times mentioned herein was, a limited liability company organized and existing under the laws of the State of California doing business in San Luis Obispo County, California.

3.      Defendant Timothy James Dolan is, and at all times mentioned herein was, an individual residing in Kern County, California and doing business in San Luis Obispo County, California, individually and under the names of Timber Construction Company, and a suspended California corporation named Timber Pacific Homes dba TD Custom Homes.

4.      On or about December 23, 2011, Defendant and Allison Marie Dolan filed a joint chapter 13 voluntary petition instituting the above-captioned bankruptcy case.

5.      On February 29, 2012, the chapter 13 trustee filed a motion to convert Defendant's case from chapter 13 to chapter 7 of the Bankruptcy Code.

6.      On March 31, 2012, the Court converted Defendant's bankruptcy case to one under chapter 7 of the Bankruptcy Code.

### JURISDICTION AND VENUE

7.      The Court has jurisdiction over this matter under the Bankruptcy Code and pursuant to 28 U.S.C. § 157(a) and § 1334(a), and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

8.      Venue in this district is proper pursuant to 28 U.S.C. § 1409(a).

9.      The statutory predicates for relief requested herein are §§ 523(a)(2)(A) and (a)(4) of the Bankruptcy Code and Rule 7001(6) of the Federal Rules of Bankruptcy Procedure.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

2

**FIRST CLAIM FOR RELIEF**

**(For Determination of Debt for Money Obtained by False Pretenses, False Representation,**

**Actual Fraud, Embezzlement and/or Larceny)**

10.     In or about 2006, Plaintiffs hired Defendant to act as the general contractor for a large construction project in Bradley, California that consisted of several parcels of property (the "Bradley Project"). The Bradley Project consisted of an expansive single family home along with a guest house, ancillary buildings, a kitchen pavilion, roads, and landscaping, among other improvements. When the Bradley Project began, Mariposa was the owner of the Bradley Project property. In approximately 2008, Hughes became the owner of the Bradley Project property.

11.     In or about 2006, Plaintiffs entered into an oral contract with Defendant for Defendant to act as a general contractor on the Bradley Project. The Bradley Project was to be completed in phases, pursuant to a budget submitted and accepted for each phase. The terms of that oral contract were as follows:

(a) Defendant was to retain subcontractors to perform work on the Bradley Project;

(b)     Defendant was to oversee the subcontractors' work on the Bradley Project, including being present at the Bradley Project during construction;

(c)     Defendant was to arrange for and obtain materials for use at the Bradley Project from vendors;

(d)     Defendant was to truthfully and accurately obtain and submit invoices from the subcontractors and vendors to Plaintiffs for payment by Plaintiffs;

(e)     Plaintiffs were to pay the amount of the subcontractor/vendor invoices by paying Defendant, who would in turn pay the subcontractor/vendor invoices;

(f)     Plaintiffs were to pay Defendant an agreed "cost plus" General Contractor Fee upon percentage of the gross invoice costs of the subcontractors and vendors (initially 12%, later reduced to 10%), as well as a set fee for Supervision, Property Management Fees, and an Accounting Fee as set forth in the budget;

DOCS_LA:252477.2 38125-001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

(g)     Defendant was to keep truthful and accurate books and records showing all charges, payments, and work done on the Bradley Project;

(h)     Defendant would obtain and maintain insurance on the Bradley Project, that Plaintiffs would pay for; and

(i)     Defendant was to obtain an executed Conditional Wavier and Release Upon Progress Payment forms under California Civil Code § 34262, and executed Unconditional Waivers ("Waivers") from the subcontractors upon final payment of their respective invoices.

12.     Plaintiff Hughes had previously worked with Defendant on other construction projects, and the two had become friends.  Because of that friendship, Plaintiff Hughes trusted Defendant, and did not believe that he would commit fraud, or would otherwise deceive him in any way.

13.     In acting as the general contractor for the Bradley Project, Defendant located and hired vendors to supply materials and subcontractors to perform work.

14.     Defendant oversaw the work on the Bradley Project, and acted as the middle man between the subcontractors/vendors on the one hand, and Plaintiffs on the other hand, pursuant to the oral agreement between the parties that governed the parties' obligations and responsibilities.

15.     For all phases of the Bradley Project, Defendant agreed to prepare and submit to Plaintiffs a budget including all work to be performed on the Bradley Project, along with fees payable to Defendant under the names of Timber Pacific or Timber Construction, which fees included a "cost plus" fee, General Contractor Fee, a Supervision Fee, a Project Management Fee, and an Accounting Fee.

16.     The parties also entered into a written contract that memorialized their agreement that the budget was fixed, and no additional monies would be charged to Plaintiffs, with the exception of pre-approved change orders.  It was agreed by the parties that the budget was "cost-plus" with a guaranteed maximum amount for each budgeted line item.

17.     The procedure adopted by the Defendant, on the one hand, and Plaintiffs on the other hand, for the submission and payment of subcontractor/vendor invoices and Defendant's fees was as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

4

follows: Defendant was to obtain invoices from the subcontractors and vendors ("subcontractor invoices"), review them for accuracy, add the invoices together for each category of work, and create a "master invoice" under one of his company names with the individual subcontractor/vendor invoices that comprised the "master invoice" attached thereto, along with a Defendant invoice for fees and the Waivers purportedly signed by each subcontractor submitting an invoice. Each "master invoice" packet was provided to Plaintiffs before payments thereon were made.

18. Until discovering Defendant's fraud and other defalcations in or about July, 2011, which fraud and other defalcations are more specifically described below, Plaintiffs paid all invoices that were submitted by Defendant, including the subcontractor invoices, by issuing checks made payable to Defendant's business names of Timber Pacific and Timber Construction. At all times, Defendant was charged with and responsible for paying the subcontractors and vendors out of the funds paid to Defendant by Plaintiffs.

19. During the course of construction, Defendant provided Plaintiffs with many invoices attached to each "master invoice," which Defendant represented to have been authentic subcontractor invoices submitted by those subcontractors and vendors for payment.. Because of their longstanding relationship and trust, Plaintiff did not question the authenticity of the subcontractor invoices submitted by Defendant or the amounts thereof.

20. During the course of the Bradley Project, Plaintiff Hughes paid in excess of $10.363 million and Mariposa paid in excess of $7.471 million in invoices submitted by Defendant purporting to have been charged directly by the respective subcontractors/vendors, and which were to be paid in full by Defendant to the subcontractors/vendors, including in excess of $1,500,000 in General Contractor Fees, Supervision Fees, Property Management Fees, and Accounting Fees paid to Defendant.

21. In or about July, 2011, Plaintiffs began to discover that many of the subcontractor invoices that were submitted by Defendant to Plaintiffs for payment were forged and/or fraudulent. Instead, on more than one occasion, Defendant created false invoices on behalf of subcontractors or vendors, including creating false letterhead for such subcontractor invoices, and fraudulently

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

5

represented to Plaintiffs that the invoices were created by the subcontractors or vendors, and contained accurate information.  In addition, when Defendant would "create" invoices using other entities' names, he would often fraudulently inflate the prices allegedly being charged by those entities.  For example, a subcontractor would inform Defendant that the charges for his work totaled $15,000.  Instead of providing an invoice from that vendor in the amount of $15,000, Defendant would create an invoice for $20,000, and falsely represent to Plaintiffs that the subcontractor was charging $20,000.  The $20,000 invoice would be attached to the "master invoice" submitted to Plaintiffs, and would be included in the "master invoice"  amount submitted by Defendant to Plaintiffs, who did not question the validity of the invoices and would pay Defendant the amount of $20,000 in exchange for an Unconditional Waiver.  Defendant in return would pocket $5,000, and pay only $15,000 to the subcontractor.  In addition, Defendant would charge his "cost plus" percentage of fees on the false $20,000 amount, while concealing the true facts from Plaintiffs and causing Plaintiffs to unknowingly pay the fraudulently inflated fees.

22.     Plaintiffs also recently discovered that a large percentage of the Waivers that were provided by Defendant that purportedly contained signatures by other entities were, in fact, not signed by those entities, but were rather forged by Defendant for the purpose of deceiving Plaintiffs into paying the subcontractor and master invoices.

23.     Plaintiffs also recently discovered that Defendant fraudulently submitted duplicate invoices covering the same materials and/or work.  When Plaintiffs would pay those invoices, Defendant would keep the duplicate payments.

24.     Based on Plaintiffs' investigation to date, Plaintiffs are informed and believe that as a result of Defendant's fraud, deceit, embezzlement and/or larceny, Plaintiffs have overpaid Defendant no less than $708,698.44.  Additionally, shortly before Plaintiffs instituted a state court action against the Debtor, Defendant recently submitted new, additional fraudulent invoices from a subcontractor totaling approximately $500,000.  Plaintiffs do not presently know the full extent of their losses resulting from Defendant's fraud and deceit, and until they obtain each subcontractors'

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

1    records, will not know the extent of their damages, and will accordingly amend or supplement this

2    Complaint to assert same once ascertained.

3        25.    After Plaintiffs confronted Defendant regarding the forged invoices and Waivers, the

4    overcharges, and the increased and improper bills, Defendant asked at least one subcontractor to lie

5    for him and create fake invoices to match the invoices that were submitted by Defendant to

6    Plaintiffs.  That subcontractor refused to participate in Defendant's fraud.

7        26.    Plaintiffs performed all obligations on their part, pursuant to their agreement with

8    Defendant.

9        27.    Defendants breached their agreement with Plaintiff by, among other things,

10   concealing from Plaintiffs that Defendant's California State Contractor's License expired in 2008,

11   but continuing to render such services thereafter, creating fake invoices under other people/entity

12   names, misrepresenting the amounts charged by subcontractors/vendors, submitting duplicate

13   billings for the same work and/or materials, forging signatures on Waivers, misrepresenting the

14   amounts withheld by Defendant, failing to be present supervising the Bradley Project, and failing to

15   keep accurate books and records with regard to the Bradley Project.

16                    **FIRST CLAIM FOR RELIEF**

17        **(For Determination of Debt For Money Obtained by False Pretenses, False**

18          **Representations and Actual Fraud, Embezzlement or Larceny**

19       28.    Plaintiffs reallege and incorporate herein by this reference the allegations in

20   paragraphs 1 through 27 above.

21       29.    Defendant knowingly presented fake and/or altered invoices and duplicate invoices to

22   Plaintiffs, containing inflated charges by subcontractors and/or vendors, constituting material

23   affirmative misrepresentations to Plaintiffs, along with invoices for his own services, based upon the

24   knowingly inflated or duplicate invoices.

25       30.    After it was discovered that Defendant had misrepresented the amounts of the

26   invoices from the subcontractors/vendors, on at least one occasion, Defendant asked a subcontractor

27   to re-create a false invoice with an inflated amount so as to match the fake invoices already

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

submitted by Defendant to Plaintiffs, and after receiving payment from Plaintiffs, to write Defendant a check for the fraudulent amount, unbeknownst to Plaintiffs.

31.     The amounts of subcontractor invoices submitted by Defendant to Plaintiffs as being the accurate amounts charged by the subcontractors and/or vendors were material facts as they pertained to the Bradley Project, and Defendant's General Contractor "cost plus" 10%-12% fee was based directly on the invoice amounts from the subcontractors and vendors.  As such, once those amounts were inflated, not only did Plaintiffs pay more to Defendant believing them to be the accurate amounts owed to the subcontractors/vendors, Plaintiffs also unknowingly paid more to Defendant as part of his commission than that to which he was entitled.

32.     Defendant knew that the invoices he was submitting to Plaintiffs for payment were duplicates of previously paid invoices or were forged or otherwise altered to higher amounts and contained improper information.  The presentation of forged and/or altered invoices and the concealment of the true amount of each invoice was perpetrated by Defendant in a manner to deceive and mislead Plaintiffs and did in fact deceive and mislead Plaintiffs.

33.     The misrepresentations regarding the amount of each invoice, the failure to disclose the true amounts being charged by each subcontractor and/or vendor, and the concealment of such information herein alleged were made by Defendant with the intent to induce Plaintiffs to rely thereon.  Plaintiffs did rely on the actions of Defendant to Plaintiffs' detriment.

34.     Plaintiffs, at the times that Defendant made these misrepresentations, were ignorant that the invoices were forged and contained inflated numbers or were duplicative.  If Plaintiffs had been aware of the fact that the invoices and Waivers were forged and the invoices contained improper and inflated amounts or were duplicative, Plaintiffs would not have paid same.  Plaintiffs' reliance was justified in light of their past relationship with Defendant, the facial validity of the invoices and Waivers, and Defendant's representations that the amounts set forth in the invoices were, in fact, owed to the subcontractors/vendors.

35.     As a direct and proximate result of Defendant's actions, Plaintiffs have been damaged in an amount of not less than $708,698.44, representing the minimum amount Defendant caused

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

8

Plaintiffs to pay to him over and above the valid amounts owed to subcontractors/vendors and the excess amounts paid to Defendant as "cost plus" General Contractor Fees.

36.     Investigation by Plaintiffs into Defendant's actions is continuing and Plaintiffs' shall amend or supplement this Complaint to allege further damages as same are ascertained.

## SECOND CLAIM FOR RELIEF

### (For Determination of Non-Dischargeability of Debt – 11 U.S.C. § 523(a)(2)(A) and (4))

37.     Plaintiffs refer to and incorporate herein by reference each and every allegation contained in paragraphs 1 through 36, hereinabove, as if fully set forth herein.

38.     By reason of Defendant's obtaining of money from Plaintiffs through false pretenses, false representations, and/or actual fraud, as set forth above, his debt to Plaintiffs should be determined to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

39.     In obtaining funds from Plaintiffs with the express instruction and understanding that said funds were to be paid over to subcontractors and/or vendors for services rendered and goods delivered, but knowingly diverting said funds to Defendant's own purposes, Defendant committed embezzlement as to such funds to which he may have rightfully obtained initial possession, but wrongfully diverted from permitted use, with the aforesaid fraudulent intent, rendering the debt arising therefrom non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).  As to funds obtained on forged, altered or duplicate invoices and for "cost-plus" General Contractor Fees based thereon, Defendant committed larceny as to such funds to which Defendant was initially not entitled, but obtained with felonious intent, rendering the debt resulting from said actions to also be non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

## THIRD CLAIM FOR RELIEF

### (For Denial of Discharge of Debtor – 11 U.S.C. § 727(a)(2), (3), (4) and (5))

40.     Plaintiffs refer to and incorporate herein by reference each and every allegation contained in paragraphs 1 through 39, hereinabove, as though fully set forth herein.

41.     Plaintiffs are informed and believe and thereon assert that Defendant, with intent to hinder, delay or defraud Plaintiffs and other creditors, or an officer of the estate, has transferred,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

9

removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed property of the Debtor, within one year before the date of the filing of the Petition or property of the estate, after the date of the filing of the Petition, in that (a) there is no accounting for the in excess of $700,000 in funds unlawfully taken by Defendant from Plaintiffs prior to the Petition Date, which funds, or assets purchased therewith, do not appear to be listed in the Debtor's schedules, nor (b) the disappearance of in excess of $54,000 in cash, and $11,000 in life insurance value stated on Defendant's original Schedules on the Petition Date, but absent from his amended Schedules filed April 16, 2012, warranting a denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2).

42.     Plaintiffs are informed and believe and thereon assert that the Defendant has concealed, destroyed, mutilated, falsified or failed to keep and preserve recorded information, including books, documents, records and papers, for which the Defendant's condition or business transactions might be ascertained, without justification, in that the Defendant falsified documents in furtherance of his wrongful obtaining of money from Plaintiffs in excess of $700,000, and has failed to account for those proceeds or assets purchased from those proceeds, and has further failed to account for the dissipation of in excess of $65,000 in cash and cash value since the Petition Date, warranting denial of discharge pursuant to 11 U.S.C. § 727(a)(3).

43.     Plaintiffs are informed and believe, and thereon assert, that the Debtor knowingly and fraudulently, in or in connection with this bankruptcy case, made a false oath or account in that (a) Defendant failed to account for the disposition of the over $700,000 of wrongfully obtained funds from Plaintiffs, (b) averred in his initial Schedules possession of $54,176.98 in cash to support a proposed chapter 13 plan, but in his Amended Schedules reports cash only $990.49, warranting denial of discharge under 11 U.S.C. § 727(a)(4).

44.     Plaintiffs are informed and believe, and thereon assert, that the Debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the Debtor's liabilities by reason of his failure to account for the disposition of over $700,000 in funds wrongfully obtained from Plaintiffs, or assets procured therefrom, or the dissipation of over $65,000 in cash and cash

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

value between the Petition Date and April 16, 2012, warranting denial of discharge pursuant to 11 U.S.C. § 727(a)(5).

45.    Plaintiffs reserve the right to amend or supplement this Complaint to provide additional grounds for denial of Defendant of a discharge, pending future investigation and discovery.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

### FIRST CLAIM FOR RELIEF

1.    For judgment in favor of Plaintiffs and against Defendant in a sum of not less than $708,698.44, or according to proof at the time of trial;

2.    For interest on the judgment as provided by law;

3.    For costs of suit incurred herein; and

4.    For such other and further relief as the Court deems just and proper.

### SECOND CLAIM FOR RELIEF

1.    For a determination and order that the debt owed to Plaintiffs by Defendant is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A);

2.    For a determination and order that the debt owed to Plaintiffs is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4);

3.    For interest as provided by law;

4.    For costs of suit incurred herein; and

5.    For such other and further relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF

1.    For a determination and order that Defendant be denied a discharge of his pre-petition debts pursuant to 11 U.S.C. §§ 727(a)(2), (3), (4) and/or (5);

2.    For costs of suit incurred herein; and

3.    For such other and further relief as the Court deems just and proper.

///

///

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

Dated:    July 6, 2012                    PACHULSKI STANG ZIEHL & JONES LLP

                                          By: /s/ Jeffrey W. Dulberg
                                               Jeffrey W. Dulberg
                                               Steven J. Kahn
                                               E-mail:  skahn@pszjlaw.com
                                               Counsel for Plaintiffs B. Wayne Hughes, Jr. and
                                               Mariposa De Oro, LLC

DOCS_LA:252477.2 38125-001